# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 17-8766-GW(JEMx) | Date | November 5, 2018 |
|---|---|---|---|
| Title | *Janice Dawson v. Hertz Transporting, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Katie Thibodeaux | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Vincent Calderone | Robert A. Dolinko |
| Ashley A. Davenport | Irene S. Tatevosyan |
| Patricia T. Barrera | |

**PROCEEDINGS:   PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [19]**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court would DENY the Motion without prejudice. If Plaintiff wishes to file an amended motion, she must do so within *forty-five (45)* days of this ruling.

|  |  | : | 20 |
|---|---|---|---|
|  | Initials of Preparer | JG | |

_**Dawson v. Hertz Transporting, Inc.**_; Case No. 2:17-cv-08766-GW-(JEMx)
Tentative Ruling on Plaintiff's Motion for Class Certification

## I. __Background__

### A. Factual Allegations

Plaintiff Janice Dawson ("Plaintiff" or "Dawson"), individually and on behalf of all other similarly situated employees, sues Hertz Transporting, Inc. ("Hertz" or "Defendant") and Does 1 through 20 for: (1) failure to pay for all hours worked; (2) failure to provide meal periods; (3) failure to provide rest periods; (4) non-compliant wage statements; (5) violations of California Business & Professions Code §§ 17200, _et seq._ ("UCL"); and (6) violations of California Labor Code § 2698 _et seq_ ("PAGA"). _See generally_ First Amended Complaint for Damages ("FAC"), Docket No. 1-1.

According to the FAC, Defendant engages in the retail car rental business and the preparation of those rental cars for public customers. _See_ FAC ¶ 23. As part of that business, Defendant employed Plaintiff as a non-exempt employee starting in or around April 2014. _See id._ ¶ 24. Plaintiff worked as a "transporter" under the maintenance department at the Los Angeles International Airport ("LAX"). _See id._ In the FAC, Plaintiff proffers various wage allegations regarding the abovementioned causes of action, and the Court will address those allegations as they arise below. _See generally id._

### B. Procedural History

Plaintiff filed a motion for class certification. _See_ Memorandum of Points and Authorities in Support of Plaintiff's Motion for Class Certification ("Motion"), Docket No. 19-1. In response, Defendant filed an opposition. _See_ Defendant Hertz Transporting, Inc.'s Opposition to Plaintiff's Motion for Class Certification ("Opp'n"), Docket No. 23. Plaintiff filed a reply in support of the Motion.[1] _See_ Plaintiff's Reply Memorandum of Points and Authorities in Support of Plaintiff's Motion for Class Certification ("Reply"), Docket No. 28.

---

[1] Nearly 18 days after Plaintiff filed the Reply and only one week before the hearing on the Motion, Defendant filed objections to the Reply. _See_ Defendant's Objection to Late-Filed "Trial Plan" Submitted with Plaintiff's Reply on Class Certification Motion ("Def.'s Objections"), Docket No. 29-1. Defendant takes issue with a "trial plan" located at Docket No. 28-3 that Plaintiff submitted along with the Reply. For the reasons stated in Defendant's Objections, the Court would disregard the "trial plan" accompanying Plaintiff's Reply. The Court would caution Defendant, however, that it should submit its concerns in a timelier manner, rather than waiting 18 days after it receives a document prompting concern.

## II.  Motion for Class Certification

### A. Legal Standard

The proponent of class treatment bears the burden of demonstrating that class certification is appropriate. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012); *In re Northern Dist. of California, Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982); *see also Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 629 (9th Cir. 2018) ("A representative plaintiff may sue on behalf of a class when the plaintiff affirmatively demonstrates the proposed class meets the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation."). Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23 of the Federal Rules of Civil Procedure. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996).

Rule 23 requires the party seeking certification to satisfy all four requirements of Rule 23(a)[2] and at least one of the subparagraphs of Rule 23(b).[3] *See id.* at 1234. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("*Dukes*"). The court is permitted to consider any material necessary to its determination, though it should not go so far as to engage in a trial of the merits. *See id.* at 350-51 (noting that the "rigorous analysis" required at class certification will "[f]requently . . . entail some overlap with the merits of the plaintiff's underlying claim"); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[I]t is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits *if they overlap* with the Rule 23(a) requirements.") (emphasis added); *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 n.15 (9th Cir. 2009);

---

[2] Rule 23(a) requires that the party/parties seeking certification show:
(1)     the class is so numerous that joinder of all members is impracticable;
(2)     there are questions of law or fact common to the class;
(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)     the representative parties will fairly and adequately protect the interests of the class.
Fed. R. Civ. P. 23(a).

[3] Here, Plaintiff seeks certification under Rule 23(b)(3).

*Blackie v. Barrack*, 524 F.2d 891, 900-01 & n.17 (9th Cir. 1975); *Sali*, 889 F.3d at 630 ("At this preliminary stage, a district court may not decline to consider evidence solely on the basis that the evidence is inadmissible at trial.").

### B. Discussion

Plaintiff seeks to certify one class and four subclasses: (1) a class of all hourly, non-exempt Hertz employees in California from October 16, 2013 through the date of certification ("Class Members"); (2) all Class Members who were not provided compliant and lawful meal periods; (3) all Class Members who were not provided timely and uninterrupted rest periods in which they were free to leave the premises; (4) all Class Members for whom Hertz automatically deducted 30 minutes from employee timecards; and (5) all current and former non-exempt or hourly employees who worked for Hertz in California at any time from October 16, 2016 through certification.  *See* Motion at 1-2.

#### 1. Numerosity

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires a demonstration that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). Generally speaking, 40 or more individuals in a proposed class has been considered sufficient to satisfy the numerosity requirement.  *See, e.g.*, *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012) ("While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not."); *Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 425 (N.D. Cal. 2011).

Here, Defendant does not contest numerosity.  *See generally* Opp'n.  According to the evidence presented, Hertz employed 2,088 employees during the class period that would constitute Class Members.  *See* Declaration of Ashley Davenport in Support of Plaintiff's Motion for Class Certification ("Davenport Decl.") ¶ 2, Docket No. 19-2.  Given that Defendant has not even attempted to meaningfully challenge Plaintiff's showing on this aspect of the Rule 23(a) requirements, the Court would likely conclude that Plaintiff has made an adequate showing under Rule 23(a)(1).  To solidify this determination, the Court would ask Plaintiff to address at the November 5, 2018 hearing how many individuals make up *each prospective sub-class*.  Assuming the figures provided are sufficient, the Court would conclude that numerosity exists as to the proposed class *and* sub-classes.  This question would be relevant only to the extent Plaintiff files an amended motion in the future, however, because other class certification requirements are

absent as discussed below.

    *2. Typicality*

Rule 23(a)(3)[4] requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class.  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose . . . ."  *Id.* (citation and internal quotation marks omitted).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Id.* (citation and internal quotation marks omitted); *see also General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("*Falcon*") (indicating that class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members"); O'Connell & Stevenson, RUTTER GROUP PRAC. GUIDE:  FEDERAL CIV. PRO. BEFORE TRIAL (The Rutter Group 2018) ("O'Connell & Stevenson"), ¶ 10:289, at 10-93 ("A plaintiff's claim is typical if it:  arises from the same event or practice or course of conduct that gives rise to the claims of other class members; and is based on the same legal theory as their claims.").  The representative plaintiffs' claims need not be identical to those of the class, but rather need only be "reasonably co-extensive with those of absent class members . . . ."  *Hanlon*, 150 F.3d at 1020.  In practice, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge."  *Falcon*, 457 U.S. at 157 n.13.

As with numerosity, Defendant does not appear to meaningfully contest Plaintiff's typicality in relation to any of the sub-classes.[5]  *See generally* Opp'n.  Pursuant to Plaintiff's declaration and timecard reports, and in the absence of evidence to the contrary, Plaintiff's claims

---

[4] Because commonality ties into predominance, the Court will address commonality along with predominance after discussing the other Rule 23(a) factors.

[5] Defendant's only qualm as to typicality rests with Plaintiff's argument about improper rounding on time cards, that purportedly resulted in shaving time from employees' pay.  *See* Opp'n at 25-26.  Because Plaintiff does not allege time-shaving and/or improper time rounding anywhere in the FAC, the Court need not reach whether Plaintiff satisfies typicality as to such a claim because it would deny certification on that basis alone.  *See Waine-Golston v. Time Warner Entm't-Advance/New House P'ship*, No. 11CV1057-GPB RBB, 2012 WL 6591610, at *3 (S.D. Cal. Dec. 18, 2012) (denying certification as to a time rounding claim because "Plaintiffs may not certify a class based on claims not asserted in the complaint.")

appear typical of the various sub-classes.  *See* Declaration of Janice Dawson ("Plaintiff's Decl.") ¶¶ 8, 15, Docket No. 19-5; *see id.* Ex. B (Plaintiff's time card reports).  Other potential class members have submitted declarations that highlight Plaintiff's typicality.  *See generally* Plaintiff's Compendium of Class Member Declarations in Support of Motion for Class Certification ("Class Member Declarations"), Docket No. 19-8.[6]   The Court would thus find that Plaintiff has satisfied typicality (*but see* footnote 5, *supra*), especially given Defendant's failure to meaningfully contest that element.

>    *3. Adequacy*

Representative parties must also fairly and adequately protect the interests of the class.  *See* Fed. R. Civ. P. 23(a)(4).  Generally speaking, "[w]hether the class representative[] satisf[ies] the adequacy requirement depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (omitting internal quotation marks) (quoting *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) and *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994)); *see Ellis*, 657 F.3d at 985 ("To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions:  '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"); *see also Sali*, 889 F.3d at 634; *Staton*, 327 F.3d at 957; *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ("*Sands*") ("The record indicates clearly that [the class representative] understands his duties and is currently willing and able to perform them.  The Rule does not require more.").

Defendant does not contest adequacy in this instance.  *See generally* Opp'n.  Based on evidence submitted, the Court would conclude that Plaintiff's counsel possesses sufficient experience and qualifications to proceed as the attorneys for the class representatives.  *See* Declaration of Patricio T.D. Barrera ("Barrera Decl.") ¶¶ 3-9 (noting the experience and qualifications of Barrera & Associates LLP), Docket No. 19-7; *see also* Declaration of Vincent Calderone ("Calderone Decl.") ¶¶ 4-16 (noting the experience and qualifications of Calderone

---

[6] The Class Members Declarations consist of statements from current and/or former Hertz employees Adolph Barley ("Barley"), Gloria Bell ("Bell"), Frank Romez ("Romez"), Karen Roquemore ("Roquemore"), Jatio Skinner ("Skinner"), Brehanna Spiller ("Spiller"), and Annette Stewart ("Stewart").  Those specific declarations are all housed within Docket No. 19-8.

Law Firm), Docket No. 19-6.  Based on the FAC, Plaintiff's Declaration, the Class Member Declarations, and other evidence submitted, the Court sees no reason to doubt that Plaintiff and her counsel would prosecute the action vigorously on behalf of the class.  *See Ellis*, 657 F.3d at 985.  The Court senses no potential antagonism between Plaintiff and any of the putative Class Members, it is unlikely that the suit is collusive, and there are no apparent conflicts of interest.  As such, the Court would find that Plaintiff and her counsel have satisfied the adequacy requirement.

*4. Commonality and Predominance*[7]

Rule 23(a)(2) requires that Plaintiff demonstrate the presence of "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The commonality requirement has been permissively construed.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Although there must be common questions of law or fact, it is not necessary that all questions of law or fact be common.  *See id.* ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); *see also Staton v. Boeing Co.*, 327 F.3d 938, 953-57 (9th Cir. 2003).  There needs to be only a single common question.  *See Dukes*, 564 U.S. at 359.  Crucially, "[w]hat matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."  *Id.* at 350 (omitting internal quotation marks) (quoting Nagareda, <u>Class Certification in the Age of Aggregate Proof</u>, 84 N.Y.U. L. Rev. 97, 131-32 (2009)).

As to predominance, Rule 23(b)(3) provides that:

> [a] class action may be maintained if Rule 23(a) is satisfied and if:
> . . .
> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

---

[7] Because the issues of commonality and predominance are linked, the Court will analyze them in the same section.

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The predominance analysis focuses on "the legal or factual questions that qualify each class member's case as a genuine controversy" and is "much more rigorous" than commonality. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). It does not involve counting the number of common issues, but weighing their significance. *See, e.g., Sands*, 244 F.3d at 1163 (contrasting the "number and importance" of common issues with the "few" and "relatively easy" individualized issues). In addition, the predominance analysis looks, at least in part, to whether there are common issues the adjudication of which "will help achieve judicial economy," further the goal of efficiency, and "diminish the need for individual inquiry." *See Vinole*, 571 F.3d at 939, 944 (quoting and citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001)); *see also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) ("A principal purpose behind Rule 23 class actions is to promote 'efficiency and economy of litigation.'") (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974)); O'Connell & Stevenson, ¶ 10:411, at 10-129 – 130 ("The objective is to promote economy and efficiency in actions that are primarily for money damages. Where common questions 'predominate,' a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class."). Neither challenges to plaintiff's legal theories nor doubts about a plaintiff's ability to prove the claim at trial, based upon "a *full* inquiry into the merits of a putative class's legal claims," are relevant in determining whether common issues predominate. *See* O'Connell & Stevenson, ¶ 10:412.5, at 10-131 (citing *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Industrial & Serv. Workers Int'l Union, AFL-CIO, CLC v. Conoco-Phillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010)) (emphasis added to quotation from *United Steel*). "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying

cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

As opposed to the previously discussed requirements, commonality and predominance differ to a greater degree depending on the proposed sub-class at issue. The Court will therefore address commonality and predominance for each specific proposed sub-class. Because the parties provide little to no discussion on certifying the all-encompassing class that includes "[a]ll hourly, non-exempt employees of Hertz Transporting, Inc. in California from October 16, 2013 through the date of certification," *see* Motion at 1, the Court will not address certification of that wider class but instead will address the proposed sub-classes.

a. Meal Break Sub-Class

Plaintiff alleges in the FAC that Defendant failed to provide adequate meal breaks in violation of California Labor Code §§ 226.7, 512(a) and applicable Industrial Welfare Commission ("IWC") Wage Orders. *See* FAC ¶¶ 54-62. In accordance with that claim, Plaintiff seeks to certify a sub-class of Class Members who were not provided compliant and lawful meal breaks ("Meal Break Sub-Class"). *See* Motion at 2.

Plaintiff argues that Defendant has and had a *facially* illegal meal break policy resulting in late meal periods, meriting class certification. *See id.* at 14-18. Plaintiff argues that Defendant's new policy regarding meal periods was not effective until January 1, 2018 and that "other policies" have facial issues. *See id.* at 15. Certain locations, according to Plaintiff, were subject to collective bargaining agreements with unlawful policies set forth in those union contracts. *See id.* at 15-16. Other issues Plaintiff points out include that Defendant purportedly did not keep adequate records of employee meal breaks and that Defendant systematically did not pay premium pay for non-compliant meal breaks. *See id.* at 16-18. In response, Defendant argues that Plaintiff's meal break claim is not subject to common class-wide proof, that it is unsupported by evidence of a uniform policy that violated the law, and that certifying the Meal Break Sub-Class would result in hundreds of mini-trials. *See* Opp'n at 19-22.

The Court would conclude that common issues do not predominate as to the Meal Break Sub-Class, at least in part based on Plaintiff's own concessions. Plaintiff concedes that prior to January 1, 2018, Defendant's new meal break policy was not in effect and that "other ***policies***" with facial issues existed. *See* Motion at 15 (emphasis added). Plaintiff also concedes that applicable collective bargaining agreements provided the meal break policy in "***some of the locations*** that employed class members . . . ." *See id.* at 15-16 (emphasis added). Plaintiff has not

proffered evidence that those contracts/collective bargaining agreements applied to all or even most employees in California or that they were somehow uniform. *See id.* The Court does not see how Plaintiff can overcome conceding that the policies instituted varied among the Meal Break Sub-Class, not to mention the fact that Plaintiff has not provided sufficient evidence of a uniform policy or uniform absence of a policy prior to January 1, 2018. Even without concessions like those in this case, courts have denied class certification in similar instances. *See, e.g.*, *Dudley v. Brookdale Senior Living Communities, Inc.*, No. CV-14-02184-PSG-(VBKx), 2015 WL 12426082, at *7 (C.D. Cal. Mar. 24, 2015) (denying certification as to an overtime sub-class because the plaintiffs "have not even attempted to demonstrate to the Court that their evidence is representative of all the communities where putative class members are/were employed. They cite to statements under oath made by former employees – without as much as providing pin cites – but do not show the Court that these statements are from employees that represent all of the communities [at issue]."); *see also Cortes v. Mkt. Connect Grp., Inc.*, 2015 U.S. Dist. LEXIS 142536, at *2 (S.D. Cal. Oct. 19, 2015) (denying motion to reconsider a denial of a motion to certify a meal break or rest break subclass in part because "even if the 2012 and 2014 Handbooks misstated the meal breaks and rest breaks employees were entitled to, there is evidence this was not a uniform policy in California."); *see also Collins v. ITT Educ. Servs., Inc.*, No. 12-CV-01395-DMS-(BGSx), 2013 WL 6925827, at *6-*8 (S.D. Cal. July 30, 2013) (holding that the plaintiffs failed to establish commonality and predominance and that "Plaintiff's evidence provides an incomplete view of Defendant's practices because it touches on only five of fifteen campuses and presents the views of twenty employees, more than half of whom worked on only two of the five campuses."). Based on Plaintiff's concession that Defendant's meal break policies at locations in California varied in the relevant time period, coupled with a lack of sufficient evidence to the contrary,[8] the Court would hold that neither the requisite commonality nor predominance exist to certify the Meal Break Sub-Class.

b. Rest Break Sub-Class

In the FAC, Plaintiff alleges that Defendant failed to provide rest periods in violation of California Labor Code § 226.7 and the applicable IWC Wage Order. *See* FAC ¶¶ 63-70. Plaintiff seeks to certify a sub-class of Class Members who were not provided timely and uninterrupted rest

---

[8] To the Court, the Class Member Declarations are insufficient (at least in the manner cited) and they fall below the evidence presented in both *Collins* and *Dudley*.

periods in which they were free to leave the premises ("Rest Break Sub-Class").  *See* Motion at 1-2.

Plaintiff asserts that common questions exist with respect to the Rest Period Sub-Class because of a facially noncompliant Hertz policy.  *See* Motion at 7-14.  To that end, Plaintiff argues that Hertz had a 2018 policy not allowing employees to leave the premises during rest periods and that Hertz management confirmed this policy and practice ("On Premise Policy").  *See id.* at 7.  Plaintiff asserts that Hertz reiterated the On Premise Policy in a February 7, 2018 memorandum stating that "Employees are not permitted to leave the lot while on break."  *See* Motion at 7-8.  According to Plaintiff, Class Members confirmed this policy and practice in various declarations.  *See* Motion at 7-8.  In part, Defendant addresses how the On Premise Policy was either lawful or not enforced.  *See* Opp'n at 13-16.  Defendant also argues that the On Premise Policy issue and the issue of whether Defendant pressured employees to work through rest breaks are individualized inquiries.  *See id.* at 13-18.

### i. *On Premise Policy*

Though the legality of requiring employees to stay on premise during rest breaks without additional constraints may or may not be lawful, the Court need not *resolve* the merits of that issue at this juncture.  The Court's interpretation of *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016), and other authorities cited in the parties' briefs is irrelevant to class certification other than to the extent that they shed light on whether adjudication of this issue is subject to class-wide proof or individualized inquiry.  The Court does take issue, however, with certain problems related to the On Premise Policy that could result in the predominance of individualized inquiries.  Plaintiff has not provided sufficient evidence that Defendant enforced the On Premise Policy beyond at LAX and Oakland, which only make up two out of the twelve locations at issue.  *See* Plaintiff's Decl. ¶ 3; Skinner Decl. ¶ 2; Spiller Decl. ¶ 2.   Moreover, declarations from various Hertz employees show that in some locations transporters are permitted to leave the facility during rest breaks and that they in fact do so.  *See* Mombay Decl. ¶ 10; Cox Decl. ¶ 6; Bartlett Decl. ¶ 10; Gonzalez-Paz Decl. ¶ 13; Perry Decl. ¶ 11.[9]  In part because the Rest Break Sub-Class does not appear limited in dates to 2018 and after, the Court would consider individualized issues of fact and/or law to predominate over common inquiries, considering that Plaintiff seems to admit that

---

[9] These declarations are housed within various sub-dockets of Docket No. 20, and the names listed in these citations constitute the last names of the Hertz employees submitting declarations.

Defendant only instituted the On Premise Policy (at least uniformly) in 2018.  *See* Motion at 7-8 (calling the On Premise Policy a "2018 policy" and noting a "February 7, 2018 memorandum to employees . . . .").  At another point in the Motion, Plaintiff asserts that Defendant "did not have ***any*** policy regarding meal and rest periods as governed by California law for the majority of the class period," and it is unclear from the evidence presented how the rest break policies in various locations or sites were uniform in their presence *or absence* during that period.

Based on these points, this is not a situation where for the class period and across California there was an undisputed and unambiguous company policy that required employees to remain available while on break.  *See Villa v. United Site Servs. Of California, Inc.*, No. 5:12-cv-00318, 2012 WL 5503550, at \*10 (N.D. Cal. Nov. 13, 2012) (denying certification and distinguishing the case from one where employees "claimed to be required to remain on the premises of their employer during their meal breaks . . . . [in which] the company policy requiring workers to remain available was unambiguous and undisputed."); *see also Delagarza v. Tesoro Refining and Marketing Company*, No. C-09-05803-EMC, 2011 WL 4017967 (N.D. Cal., Sept. 8, 2011)).  At least given the current Rest Break Sub-Class definition, individualized factual considerations predominate over any common questions as to the On Premise Policy.

### ii. *Pressuring Employees to Miss Rest Breaks*

Plaintiff also argues that Defendant pressured employees into missing rest breaks, purportedly satisfying the commonality and predominance requirements.   *See* Motion at 11-14. To this end, Plaintiff cites the nature of the work assignments as the reason for missing, shortening, and/or interrupting breaks.  *See id.* at 12.  Plaintiff asserts that her role as a transporter inherently required her to work offsite at vendor locations, with Defendant maintaining control over her as a result and requiring Plaintiff to remain "on duty."  *See id.*  Because she did not work on-site, Plaintiff would receive phone calls or interruptions for a work assignment and she would prepare or wait for paperwork from the vendors.  *See id.*

As evidence that there is a "pattern and practice of pressuring [employees] not to take their meal and rest breaks," *see* Motion at 13, Plaintiff cites broadly to "Class Member Declarations." *See id.*  That broad citation and lack of meaningful explanation does not demonstrate to the Court that common issues of fact and/or law would predominate over individualized inquiries.  By contrast, Defendant has submitted evidence that even employees on Plaintiff's own team do not experience these interruptions purportedly inherent to the job.  *See* Maye Decl. ¶¶ 12-13 (stating

that "Mr. Berlic reminds [his crew] to take our rest and lunch breaks often."); Dummermuth Decl. ¶¶ 10-13 (same); Weatherspoon Decl. ¶¶ 12-13 (same); Livingstone Decl. ¶¶ 12-13 (same); Carnahan Decl. ¶¶ 12-13 (same).  Defendant has submitted additional evidence that other Hertz employees have not experienced the claimed interruptions.  *See* Carnahan Decl. ¶¶ 17-20; Cruz Decl. ¶¶ 17-23; Tabares ¶¶ 15-17; Hale Decl. ¶¶ 14-17.[10]

If anything, the amorphous "pressuring" of employees to miss rest breaks evokes the imminent prospect of numerous individualized inquiries, and there is insufficient evidence of any uniform policy applying such pressure.  Without more, the Court would conclude that Plaintiff fails to offer evidence that would allow class-wide adjudication on this issue.  *See Villa*, 2012 WL 5503550, at *9 (finding a lack of predominance on Plaintiff's second theory that "demands of his job and route schedule made it impossible to take the breaks to which he was entitled. . . . [because] [a]djudication of this claim will require an analysis of each individual driver's route and schedule, which varies even from day to day for any given individual."); *see also Alcantar v. Hobart Serv.*, No. ED CV 11-1600 PSG, 2012 WL 5946129, at *4 (C.D. Cal. Nov. 28, 2012), *aff'd*, 800 F.3d 1047 (9th Cir. 2015) (holding in the district court opinion that "where the evidence does not show, on a classwide basis, whether members of the proposed class missed rest breaks as a result of a supervisor's coercion or the employees' uncoerced choice to waive such breaks and continue working, commonality is not achieved."); *see also Ordonez v. Radio Shack, Inc.*, No. CV 10-7060-CAS (JCGx), 2013 WL 210223, at *12 (C.D. Cal. Jan. 17, 2013) (holding, though in a slightly different context, that "based on the evidence in the record, plaintiff appears unable to offer any classwide method for proving when class members were or were not authorized and permitted to take a rest break. Without such a classwide method for demonstrating which class members, during which shift, were not authorized and permitted to take rest breaks in accordance with California law, individualized issues will likely predominate over classwide ones at trial.").  Based on the evidence presented, the Court would find at least a lack of predominance if not also commonality.

### c. Auto-Deduction Sub-Class

In the FAC, Plaintiff alleges that Defendant failed to pay for all hours worked, including through a policy of automatically deducting 30 minutes when employees do not take compliant meal periods and/or do not clock in and out for meal periods.  *See* FAC ¶¶ 41-53.  Plaintiff seeks

---

[10] These declarations are housed within various sub-dockets of Docket No. 20, and the names listed in these citations constitute the last names of the Hertz employees submitting declarations.

to certify a sub-class of Class Members for whom Hertz automatically deducted 30 minutes from employee timecards ("Auto-Deduction Sub-Class").  *See* Motion at 1-2.  Defendant rebuts, arguing that auto-deduction occurring at its LAX site is lawful and that auto-deduction cannot satisfy the predominance requirement.  *See* Opp'n at 22-24.

Again the Court ignores the parties' merit-based arguments on automatic deductions, except to the extent they relate to class certification.  The Court recognizes that "certification of an auto-deduction subclass is distinct from certification of a rest or meal break subclass because individualized issues more readily predominate in meal and rest break claims."  *See Rojas-Cifuentes v. ACX Pac. Nw. Inc.*, No. 2:14-CV-00697-JAM-(CKDx), 2018 WL 2264264, at *9 (E.D. Cal. May 17, 2018) (citing *Wilson v. TE Connectivity Networks, Inc.*, No. 14-CV-04872-EDL, 2017 WL 1758048, at *7 (N.D. Cal. Feb. 9, 2017)).  Auto-deduction policies assume employees always take meal breaks, and as such those policies generally deduct time from employees' hours without possessing records in support of those deductions.  *Wilson*, 2017 WL 1758048, at *2, *7-11.  Despite the fact a supervisor may correct an employees' hours and eliminate deductions upon discovering no such break occurred, individual inquiries are unnecessary if corrections to deductions are "extremely rare."  *See id.*, at *11.  An auto-deduction sub-class "can be certified where [the plaintiff] presents evidence that the employer did not communicate to employees the fact that auto-deduct could be manually reversed or that the employer did not actually implement such reversals."  *Wilson*, 2017 WL 1758048, at *9.  Nonetheless, the inclusion of time records does not necessarily "support a meal period subclass's claim because those time records may suggest numerous possibilities as to why certain employees may have had a non-compliant meal break."  *See Rojas-Cifuentes*, 2018 WL 2264264, at *9 (citing *Ordonez*, 2013 WL 210223, at *7).

Multiple courts in this Circuit have found that proposed auto-deduction sub-classes have satisfied the commonality requirement.  Those cases include *Wilson* and *Rojas-Cifuentes*, already discussed to some degree above, among others.  *See Wilson*, 2017 WL 1758048, at *9-*11 (finding that the plaintiff satisfied the commonality requirement, but not reaching the predominance inquiry); *see also Rojas Cifuentes*, 2018 WL 2264264, at *14 (holding that the plaintiff "has satisfied all of the Rule 23 elements for the Wilmington Auto-Deduct subclass."); *see also Villa*, 2012 WL 5503550, at *6 (denying certification but holding that "[t]hough there may be divergent factual predicates concerning how th[e] [auto-deduct] policy affected different employees, it does

13

raise shared legal issues, which is all that is required to satisfy the commonality requirement of Rule 23(a).").

Plaintiff has submitted some evidence that Defendant applied auto-deductions to all LAX transporters, though she has not presented evidence that this practice occurs uniformly, sporadically, or not at all across the rest of California. *See* Supplemental Declaration of Ashley Davenport ("Davenport Decl.") Ex. Z at CM/ECF pgs. 56-57, Docket No. 28-1. With the Auto-Deduction Sub-Class not clearly limited to LAX transporters,[11] the Court would find commonality and predominance absent as to the Auto-Deduction Sub-Class because Plaintiff provides insufficient evidence of a common auto-deduction practice or policy in California. The above discussed cases where courts found commonality and/or predominance are sufficiently different from the case at bar. For example, in *Rojas-Cifuentes*, the court noted that the plaintiff "presented evidence of employer's effective auto-deduction policy and practice *through employee time records* . . . . [and] *Defendants have admitted that they have not once reversed an auto deduction*." *See* 2018 WL 2264264, at *13 (emphasis added). This, to the district court, demonstrated that common questions predominated over individual inquiries as to the auto-deduction class. *See id.* Unlike in *Rojas-Cifuentes*, here Plaintiff has not demonstrated through time records that Defendant applied auto-deduction practices nor has sufficient evidence as to reversals been proffered. The Court also distinguishes *Villa* from the case at bar, where the district court found commonality but specifically noted that the auto-deduction question "concerns a policy of Defendant that appears to be company-wide, and Defendant has presented no evidence to the contrary . . . ." *See Villa*, 2012 WL 5503550 at *6. In fact, this situation is more similar to those where courts found an absence of predominance and/or commonality regarding an auto-deduction sub-class. *See, e.g.*, *Ramirez v. United Rentals, Inc.*, No. 5:10-CV-04374 EJD, 2013 WL 2646648 (N.D. Cal. June 12, 2013), (finding no commonality because the "uncontroverted evidence show[ed] that [auto-deduction] practices varied from branch to branch, such that there was no common policy."). The Court would conclude that Plaintiff has not satisfied her burden to

---

[11] Plaintiff exemplifies the absence of a statewide policy in the Reply, seemingly referring to the Auto-Deduct Sub-Class as the "LAX class." *See* Reply at 14. In addition, Plaintiff seems to argue in the Reply that Defendant applied auto-deduction only to LAX transporters. *See id.* The proposed Auto-Deduction Sub-Class definition does not proffer such a limitation. *See* Motion at 2.

establish commonality or predominance.[12]

### d. Wage Statement Sub-Class

In the fourth cause of action, Plaintiff pleads "non-compliant wage statements" in violation of California Labor Code § 226(a).  *See* FAC ¶¶ 71-78.  Plaintiff seeks to certify a sub-class of current and former employees who worked for Hertz in California at any time from October 16, 2016 through certification, labeling that as the "Wage Statement Sub-Class."  *See* Motion at 2.  To support certification of the Wage Statement Sub-Class, Plaintiff argues that: (1) Hertz provided uniform and standardized wage statements to employees during the aforementioned period and (2) the statutorily required information "cannot be promptly and readily determined from the wage statements themselves."  *See* Motion at 21.  According to Plaintiff, the question of whether Hertz's "uniform and standardized" wage statements comply with California Labor Code § 226 consists of predominantly common questions subject to class treatment.  *See id.* at 21-22.  In response, Defendant argues that Plaintiff's California Labor Code § 226(a) claim is derivative of the other claims, and thus the Court need not separately address the suitability of certifying the Wage Statement Sub-Class.  *See* Opp'n at 27-28.  Defendant also asserts that Hertz paid premium wages for missed breaks, including those payments in employees' wage statements.  *See id.* at 28.  According to Defendant, there is no evidence of a class-wide policy to exclude those payments from wage statements.  *See id.* at 28.

Courts have declined to certify a wage statement class when the wage statement claim is derivative of other wage claims that are not suitable for certification.  *Lampe v. Queen of the Valley Med. Ctr.*, 19 Cal. App. 5th 832, 852 (2018), *reh'g denied* (Feb. 14, 2018), *review denied* (Apr. 18, 2018) (agreeing that "there was no basis to certify the wage statement class which was derivative of the other wage claims."); *Johnson v. Goodyear Tire & Rubber Co.*, 2015 U.S. Dist. LEXIS 174847, at *15 (C.D. Cal. Dec. 22, 2015) (holding that "[h]aving concluded that common issues do not predominate as to either the uncompensated bank runs or the miscalculation of overtime, the Court also finds that common issues do not predominate on the derivative claim alleging deficient wage statements.").  There are indications that the wage statement claim is

---

[12] The above discussed issues are sufficient to doom certification as to this sub-class regardless, so the Court need not address Plaintiff's argument that there is a rebuttable presumption in favor of Plaintiff because of LAX time entry/ time record deficiencies.  *See* Reply at 15.  Nonetheless, the Court would note that Plaintiff has not provided sufficient evidence (or at least cited sufficient evidence) for its claim that Plaintiff's record keeping was improper and would therefore merit such a presumption.

derivative of Plaintiff's other claims.  For example, the FAC alleges that "Defendants issued wage statements to Plaintiff and class members that failed to include the meal period and rest break premiums owed them pursuant to California Labor Code § 226.7" and that "Plaintiff's wage statements did not show all the hours worked during on-duty meal periods."  *See* FAC ¶¶ 74-75. In the Motion, Plaintiff states that the wage statement claim is "derivative and therefore should be certified with Plaintiff's claims for regular rate, unpaid wages, meal period, rest break, minimum wages, and wage statement violations . . . ."  *See* Motion at 2 n.1.  In the Reply, Plaintiff indicates the claim's derivative nature in asserting that "Defendant systematically violated California Labor Code § 226 by failing to provide paystubs that provided compensation for all hours worked and premium compensation for meal and rest breaks that were not provided by Defendant."  *See* Reply at 19-20.  Based on these characterizations of the wage statement claim as derivative of the other claims, the Court would conclude Plaintiff has likewise not herein satisfied commonality and predominance.[13]

### e. UCL Claim

The Court does not see any proposed sub-class definition that includes Plaintiff's UCL claim,[14] though in the Motion Plaintiff asserts that the UCL claim is "derivative and therefore should be certified with Plaintiff's claims for regular rate, unpaid wages, meal period, rest break, minimum wages, and wage statement violations . . . ."  *See* Motion at 2 n.1.  Even if Plaintiff did propose a sub-class for the UCL claim, the Court would hold that that claim is derivative of the above wage claims and fails for the same reasons as they do.

### 5. Superiority

With Plaintiffs failing to demonstrate to the Court's satisfaction that common issues

---

[13] Plaintiff cites a number of cases in support of finding commonality and predominance as to the Wage Statement Sub-Class, including *Seckler v. Kindred Healthcare Operating Grp., Inc.*, No. SACV 10-01188DDP, 2013 WL 812656, at *12 (C.D. Cal. 2013), *Bellinghausen v. Tractor Supply Co.*, No. C-13-02377 JSC, 2014 WL 465907, at *5-9 (N.D. Cal. 2014), and *Schulz v. QualxServ, LLC*, No. 09-CV-17-AJB, 2012 WL 1439066, at *7-8 (S.D. Cal. 2012). *See* Motion at 22.  These cases are largely unhelpful.  *Bellinghausen* does not so much as mention certification and instead concerns a motion to dismiss.  2014 WL 465907, at *6-*9.  *Seckler* involves the certification of a wage statement class involving claims under California Labor Code § 226, but the court there did not discuss any of the Rule 23(a) or (b) requirements at issue here regarding the Wage Statement Sub-Class.  *See* 2013 WL 812656, at *12. The court in *Schulz* did ultimately certify a wage statement class, but its discussion of the predominance requirement was minimal at best and the court did not discuss whether the wage statement claim was derivative.  *See* 2012 WL 1439066, at *8.

[14] Plaintiff alleges a UCL claim in the FAC, derivative of Plaintiff's other claims.  *See* FAC ¶¶ 79-84.

predominate as to the various sub-classes, the Court need not reach the question of "superiority" under Rule 23(b)(3).

### III. <u>Conclusion</u>

For the foregoing reasons, the Court would **DENY** the Motion without prejudice.  If Plaintiff wishes to file an amended motion, she must do so within thirty (30) days of this ruling.[15]

---

[15] If Plaintiff files an amended motion for class certification, she should include pin-cites for every factual statement made or evidence referenced, as opposed to broadly citing entire exhibits.  At the November 5, 2018 hearing the Court will ask Plaintiff what would change in an amended motion for class certification.