# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-8766-GW(JEMx) | Date | September 19, 2019 |
|---|---|---|---|
| Title | *Janice Dawson v. Hertz Transporting, Inc., et al.* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Terri A. Hourigan | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Vincent Calderone | Irene S. Tatevosyan |
| Patricio T. Barrera | |
| Ashley A. Davenport | |

**PROCEEDINGS:      PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [72]**

Court and counsel confer. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Plaintiff's Motion is DENIED. A renewed motion is to be filed by October 21, 2019. The Court will hear the matter on November 7, 2019 at 8:30 a.m.

|  | : | 03 |
|---|---|---|
| Initials of Preparer | JG | |

**_Dawson v. Hertz Transporting, Inc._**; Case No. 2:17-cv-08766-GW-(JEMx)
Tentative Ruling on Renewed Motion for Preliminary Approval of Class Action Settlement

## I. Background

### A. Procedural History

Plaintiff Janice Dawson ("Plaintiff" or "Dawson"), individually and on behalf of all other similarly situated employees, sues Hertz Transporting, Inc. ("Hertz" or "Defendant") and Does 1 through 20 for: (1) failure to pay for all hours worked; (2) failure to provide meal periods; (3) failure to provide rest periods; (4) non-compliant wage statements; (5) violations of California Business & Professions Code §§ 17200, _et seq._ ("UCL"); and (6) violations of California Labor Code § 2698 _et seq._ ("PAGA"). _See generally_ Second Amended Complaint for Damages ("SAC"), Docket No. 31.

According to the SAC, Defendant engages in the retail car rental business and the preparation of those rental cars for public customers. _See_ SAC ¶ 23. As part of that business, Defendant employed Plaintiff as a non-exempt employee starting in or around April 2014. _See id._ ¶ 24. Plaintiff worked as a "transporter" under the maintenance department at Los Angeles International Airport ("LAX"). _See id._ Plaintiff's legal claims are based primarily on the following allegations: (1) Defendant did not pay employees for all hours worked because all hours were not recorded; (2) Defendant did not pay employees earned overtime compensation; (3) Defendant did not pay employees at least minimum wage for work done off-the-clock; (4) Defendant did not provide employees timely uninterrupted meal periods or provide alternative compensation for missed meal periods; (5) Defendant did not provide all rest periods or alternative compensation for missed rest periods; (6) Defendant did not provide complete and accurate wage statements; and (7) Defendant did not compensate employees within permissible time periods, including upon termination. _See id._ ¶¶ 25-34.

Plaintiff filed a motion for class certification on June 21, 2018. _See_ Memorandum of Points and Authorities in Support of Plaintiff's Motion for Class Certification ("Class Cert. Motion"), Docket No. 19-1. On November 5, 2018, the Court denied the motion without prejudice.[1] _See_ Final Ruling on Plaintiff's Motion for Class Certification ("Class Cert. Ruling"), Docket No. 30.

---

[1] The denial of class certification rested primarily on the failure to meet the commonality and predominance requisites of Federal Rule of Civil Procedure 23.

Plaintiff originally filed a Motion for Preliminary Approval of Class Action Settlement on February 25, 2019. *See* Plaintiff's Notice of Motion and Motion for Preliminary Approval of Class Action Settlement, Docket No. 48. The Court denied the motion because Plaintiff failed to address recent amendments to Federal Rule of Civil Procedure 23(e)(2). *See* Order, Docket No. 51. Plaintiff filed an amended motion for preliminary approval on March 22, 2019. *See* Memorandum of Points and Authorities in Support of Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement ("MPA II"), Docket No. 52-1. The Court denied the MPA II because Plaintiff failed to address the deficiencies identified in the Court's original denial of class certification. *See* Final Ruling on Renewed Motion for Preliminary Approval of Class Action Settlement, Docket No. 56. Plaintiff filed a second renewed motion for preliminary approval. *See* Memorandum of Points and Authorities in Support of Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement (MPA III), Docket No. 58-1. The Court denied the MPA III because one of the identified subclasses did not meet the requirements for certification. *See* Order: Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement, Docket No. 66, 11-12. The Court also identified deficiencies in the formula for compensating class members that put the settlement outside the range of possible approval. *See id.* at 16-17.

Before the Court is Plaintiff's renewed motion for preliminary approval of class action settlement. *See* Memorandum of Points and Authorities in Support of Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement ("MPA IV"), Docket No. 72-1.

B. Settlement Agreement

1. *Scope of the Class and Released Claims*

The Settlement Agreement currently before the Court covers five distinct subclasses:

- All persons who are or were employed by Defendant in a non-exempt, hourly paid position in California from October 16, 2016 until the date of preliminary approval who are raising a Labor Code § 226 claim because they received non-compliant paystubs that failed to reflect all monies owed ("One-Year §226 Subclass").

- All persons who are or were employed by Defendant in a non-exempt, hourly-paid position in California from January 1, 2018 until the date of preliminary approval who were subjected to the meal and rest break policy, and payment of wages policy implemented by Defendant ("2018 Subclass").

- All persons who are or were employed by Defendant in a non-

2

exempt, hourly-paid position in California at Defendant's location at LAX airport, subject to Defendant's auto-deduction of a thirty-minute meal period of October 16, 2013 until the date of preliminary approval. ( the "Class Period" for the "LAX Auto-Deduct Subclass").

- All persons who are or were employed by Defendant in a non-exempt, hourly paid position in California subject to the meal and rest break and payment of wages policies contained in the Collective Bargaining Agreement between Hertz Transporting, Inc. (Los Angeles/Burbank/ Lancaster, California) and Teamsters Automotive, Industrial and Allied Workers Local No. 495 from October 16, 2013 until the date of preliminary approval. ("LA/Burbank/Lancaster CBA Subclass").

- All persons who are or were employed by Defendant in a non-exempt, hourly paid position in California subject to the meal and rest break and payment of wages policies contained in the Collective Bargaining Agreement between Hertz Transporting, Inc. (Long Beach) and Teamsters Automotive, Industrial and Allied Workers Local No. 495 from October 16, 2013 until the date of preliminary approval. ("Long Beach CBA Subclass").

*See* Class Action Settlement Agreement ("Settlement Agreement" or "Settlement"), MPA IV, Ex. 1, ¶ 8.  As part of the Settlement, Plaintiff and all members of the Settlement Class who do not opt out, release Defendant and its corporate parents or subsidiaries from:

all claims for unpaid wages, premiums, and civil and statutory penalties under the applicable California Labor Code, Wage Orders, regulations, and/or provisions of federal or state law governing wages and hours of work that were asserted in the Action, or that arise from or could have been asserted based on any of the facts, circumstances, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act alleged in Plaintiff's Second Amended Complaint arising out of or related to the Class Member's employment with [Defendant].

*See id.* ¶ 29.  All members of the Settlement Class will have sixty days from the mailing of the initial notice by the settlement administrator to object or request exclusion from the class.  *See id.* ¶ 17.

　　　2.　*Relief*

In exchange for class members' release of their claims, the Settlement provides monetary consideration.  The Defendant agrees to pay a non-reversionary total gross settlement amount of

$1,750,000. *See id.* ¶ 15. This amount is inclusive of a maximum of $612,500 in attorney's fees for class counsel (35%), up to $35,000 in litigation costs, an estimated maximum settlement administration fee of $20,000, a class representative service award of $10,000, and a payment of $15,000 to the Labor and Workforce Development Agency under PAGA (75% of the PAGA penalty payment of $20,000). *See id.* The remainder, an estimated $1,057,500 will be distributed to the Settlement Class.[2] *See id.* The amount each class member will be eligible to receive will be calculated based on a formula taking into account the type(s) of claims for which the individual class member is entitled to compensation and the number of weeks worked during the Class Period. *See id.*

## II.  Motion for Preliminary Approval of Class Action Settlement

### A. Legal Standard

Under Ninth Circuit precedent, there is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (internal quotation marks omitted). Nonetheless, Federal Rule of Civil Procedure 23(e) requires district courts to perform a searching analysis before approving class action settlements.[3] "[S]ettlement class actions present unique due process concerns for absent class members[.]" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see Allen*, 787 F.3d at 1223 ("[T]he district court has a fiduciary duty to look after the interests of those absent class members."). In instances where parties arrive at a settlement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Preliminary approval of class action settlements invoke a two-step inquiry. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 672727, at *12 (N.D. Cal. Feb. 16, 2017). As the first step, courts decide if a class exists. *Staton*, 327 F.3d at 952. "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). As the second step, courts consider "whether a proposed settlement is fundamentally fair, adequate, and

---

[2] 1,750,000 - 612,500 - 35,000 - 20,000 - 10,000 - 15,000 = 1,057,500.

[3] The Court recognizes that as of December 1, 2018, an amended version of Rule 23 is in effect. As such, the Court follows the amended Rule 23 in all respects.

reasonable." *Hanlon*, 150 F.3d at 1026. If the parties settle before class certification, the Ninth Circuit requires "a more probing inquiry than may normally be required under Rule 23(e)." *Id.* During the preliminary approval stage, courts "determine whether the settlement falls 'within the range of possible approval.'" *Booth v. Strategic Realty Tr., Inc.*, 2015 WL 3957746, at *6 (N.D. Cal. June 28, 2015) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). Courts examine "the settlement taken as a whole, rather than the individual component parts . . . for overall fairness." *Hanlon*, 150 F.3d at 1026. Courts cannot "delete, modify or substitute certain provisions. [ ] The settlement must stand or fall in its entirety." *Id.* (internal quotation marks and citation omitted).

### B. Class Certification

Under the foregoing legal standard, the Court would begin by deciding whether class certification is warranted. The proponent of class treatment bears the burden of demonstrating that class certification is appropriate. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012); *In re Northern Dist. of California, Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir. 1982); *see also Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 629 (9th Cir. 2018) ("A representative plaintiff may sue on behalf of a class when the plaintiff affirmatively demonstrates the proposed class meets the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation."). Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996).

Rule 23 requires the party seeking certification to satisfy all four requirements of Rule 23(a)[4] and at least one of the subparagraphs of Rule 23(b).[5] *Id.* at 1234. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or

---

[4] Rule 23(a) requires that the party/parties seeking certification show:

    (1)      the class is so numerous that joinder of all members is impracticable;
    (2)      there are questions of law or fact common to the class;
    (3)      the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
    (4)      the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).
[5] Here, Plaintiff seeks certification under Rule 23(b)(3).

fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("*Dukes*").  The Court is permitted to consider any material necessary to its determination, though it should not go so far as to engage in a trial of the merits.  *Id.* at 350-51 (noting that the "rigorous analysis" required at class certification will "[f]requently . . . entail some overlap with the merits of the plaintiff's underlying claim"); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) ("[I]t is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits *if they overlap* with the Rule 23(a) requirements.") (emphasis added); *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 949 (9th Cir. 2011); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 947 n.15 (9th Cir. 2009); *Blackie v. Barrack*, 524 F.2d 891, 900-01 & n.17 (9th Cir. 1975); *Sali*, 889 F.3d at 630 ("At this preliminary stage, a district court may not decline to consider evidence solely on the basis that the evidence is inadmissible at trial.").

Here, the Settlement was reached after denial of Plaintiff's motion for class certification. *See generally* Class Cert. Ruling.   Therefore, as a preliminary matter, Plaintiff seeks certification of a class for settlement purposes only pursuant to Federal Rule of Civil Procedure 23(b)(3).  *See* MPA at 12-13.  A court may certify a class for settlement purposes only.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015).  In *Amchem Products*, the Supreme Court explained the differences between approving a class for settlement and for litigation purposes:

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.  But other specifications of the Rule − those designed to protect absentees by blocking unwarranted or overbroad class definitions − demand undiluted, even heightened, attention in the settlement context.  Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.

521 U.S. at 620.  The Court will analyze each of the Rule 23(a) factors for the proposed class.

### 1. Numerosity

Rule 23(a)(1) requires a demonstration that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Generally speaking, 40 or more individuals

in a proposed class has been considered sufficient to satisfy the numerosity requirement.  *See, e.g.*, *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012) ("While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not."); *Greko v. Diesel U.S.A., Inc.*, 277 F.R.D. 419, 425 (N.D. Cal. 2011).  There are over 1,000 total Class Members, including approximately 1,437 Class Members in the "One Year § 226 Subclass," 1,050 Class Members in the "2018 Subclass," 528 Class Members in the "LAX Auto-Deduct Subclass," 582 Class Members in the "LA/Burbank/Lancaster CBA Subclass," and 51 Class Members in the "Long Beach CBA Subclass."  *See generally* MPA III.  Therefore, the Court would find that the proposed class, and each subclass meet the numerosity requirement.

### 2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2).  Courts must construe this rule "permissively." *Hanlon*, 150 F.3d at 1019.  "All questions of fact and law need not be common to satisfy the rule." *Id.*  "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores*, 564 U.S. at 359 (internal quotation marks and brackets omitted); *see Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (it is not necessary "that every question in the case, or even a preponderance of questions, is capable of class wide resolution.  So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." (internal quotation marks omitted)).  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" but "[t]his does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores*, 564 U.S. at 349-50 (internal quotation marks omitted).  Rather, "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*  "Whether a question will drive the resolution of the litigation necessarily depends on the nature of the underlying legal claims that the class members have raised." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014); *see Parsons*, 754 F.3d at 676 ("[C]ommonality cannot be determined without a precise understanding of the nature of the underlying claims.").

Based on an independent review of the relevant pleadings and issues, the Court would conclude that Plaintiff's and Class Members' claims against Defendant involve common factual

7

and legal issues.  *See generally* MPA III.  Common factual issues include, but are not limited to, Defendant's overtime wage policies and practices, Defendant's meal and rest break policies and practices, and the completeness and accuracy of the uniform wage statements Defendant provided to Class members.  *See generally id.*  Common legal issues would include, but are not limited to, whether an employer may legally auto-deduct meal breaks for employees who work offsite and whether Hertz's union contracts violated wage and hour laws.  *See generally id.*

### 3. Typicality

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class.  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose. . . ." *Id.* (citation and internal quotation marks omitted).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Id.* (citation and internal quotation marks omitted); *see also General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("*Falcon*") (indicating that class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members"); O'Connell & Stevenson, RUTTER GROUP PRAC. GUIDE:  FEDERAL CIV. PRO. BEFORE TRIAL (The Rutter Group 2018) ¶ 10:289, at 10-93 ("A plaintiff's claim is typical if it: arises from the same event or practice or course of conduct that gives rise to the claims of other class members; and is based on the same legal theory as their claims.").  The representative plaintiffs' claims need not be identical to those of the class, but rather need only be "reasonably co-extensive with those of absent class members . . . ."  *Hanlon*, 150 F.3d at 1020.  In practice, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge."  *Falcon*, 457 U.S. at 157 n.13.

From the Court's independent review, the Court would conclude that Plaintiff's subclasses implicate the same course of conduct that Defendant directs at all subclass members via uniform employment policies and practices.  *See* Declaration of Patricio Barrera in Support of Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement, ("Barrera Decl.), Docket No. 58-2, at 16.  Plaintiff and subclass members are subject to the same or substantially similar

employee compensation policies and have received substantially similar wage statements from Defendant. Furthermore, they would have all suffered from substantially the same injuries, which include but are not limited to insufficient and untimely compensation. *See id.* Dawson was a non-exempt, hourly paid employee, employed as a transporter at LAX from April 2014 through August 2018. *See* Declaration of Janice Dawson in Support of Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement ("Dawson Decl."), ¶ 2. Defendant auto-deducted thirty minutes each day from Plaintiff's time sheets for rest and meal periods, although Dawson was not relieved of all duties during those periods and did not always receive a meal and rest break. *See id.* ¶¶ 3-4. She did not receive premium payment for missed meal and rest periods, and her wage statements were frequently inaccurate as they did not account for all hours worked during a pay period. *See id.* Dawson's experience was typical of all Class Members. Dawson fits into the class definition for each class, which the exception of the "Long Beach CBA Subclass." Although Dawson does not fit the class definition for the "Long Beach CBA Subclass," given that she was employed in Los Angeles rather than Long Beach, her employment was governed by a collective bargaining agreement with the *exact same* relevant provision as the collective bargaining agreement governing the employees in the "Long Beach CBA Subclass." *See* MPA III at 22, 24. Therefore, the Court would find that the typicality requirement is met for each of the subclasses.

  *4. Adequacy*

  Representative parties must also fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4). Generally speaking, "[w]hether the class representative[] satisf[ies] the adequacy requirement depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (omitting internal quotation marks) (quoting *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) and *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994)); *see Ellis*, 657 F.3d at 985 ("To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"); *see also Sali*, 889 F.3d at 634; *Staton*, 327 F.3d at 957; *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) ("*Sands*") ("The record indicates clearly that [the class representative] understands his duties and

is currently willing and able to perform them.  The Rule does not require more.").

There is no question to the Court that the class representative here fairly and adequately protect the interests of the class under Rule 23(a)(4).  The class representative does not have any conflicts with absent class members that have resulted in anything less than the vigorous prosecution of the claims pursued in this litigation.  *See* Barerra Decl. ¶ 62.  Plaintiff's attorneys are experienced litigators in the field of class action and employment litigation.  *See id.* ¶¶ 3-6; Declaration of Vincent Calderone in Support of Plaintiff Janice Dawson's Motion for Preliminary Approval of Class Action Settlement ("Calderone Decl."), Docket No. 58-3, ¶¶ 5-10.  The Court sees no indicator that Plaintiff's attorneys were unwilling or unable to vigorously represent the interests of the class in negotiating the Revised Settlement or otherwise.  Thus, the Court would declare Rule 23(a)(4) satisfied.

*5. Predominance and Superiority*

Because Plaintiff seeks to certify a class under Rule 23(b)(3), the Court must analyze whether the proposed class satisfies the predominance and superiority inquiry.  Rule 23(b)(3) provides that:

> [a] class action may be maintained if Rule 23(a) is satisfied and if:
> . . .
> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The predominance analysis focuses on "the legal or factual questions that qualify each class member's case as a genuine controversy" and is "much more rigorous" than commonality.  *See Amchem Products*, 521 U.S. at 623-24.  It does not involve counting the number of common issues, but weighing their significance.  *See, e.g., Sands*, 244 F.3d at 1163 (contrasting the "number and

importance" of common issues with the "few" and "relatively easy" individualized issues).  In addition, the predominance analysis looks, at least in part, to whether there are common issues the adjudication of which "will help achieve judicial economy," further the goal of efficiency, and "diminish the need for individual inquiry."  *See Vinole*, 571 F.3d at 939, 944 (quoting and citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001)); *see also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) ("A principal purpose behind Rule 23 class actions is to promote 'efficiency and economy of litigation.'") (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974)); O'Connell & Stevenson, ¶ 10:411, at 10-129-130 ("The objective is to promote economy and efficiency in actions that are primarily for money damages.  Where common questions 'predominate,' a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class.").  Neither challenges to plaintiff's legal theories nor doubts about a plaintiff's ability to prove the claim at trial, based upon "a *full* inquiry into the merits of a putative class's legal claims," are relevant in determining whether common issues predominate.  *See* O'Connell & Stevenson, ¶ 10:412.5, at 10-131 (citing *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Industrial & Serv. Workers Int'l Union, AFL-CIO, CLC v. Conoco-Phillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010)) (emphasis added to quotation from *United Steel*).  "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action."  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

For the "One Year § 226 Subclass" the Court would find that Plaintiff has failed to demonstrate predominance.  Although the existence of a common policy as to wage statements, may, at a superficial level suggest that common questions predominate, the derivative nature of the claim suggests that questions regarding whether each individual subclass member has a valid claim under any other legal theory will drive the resolution of the subclass's claims.

Plaintiff seems to suggest that employees need not establish "actual injury" to make a claim under California Labor Code Section 226 ("Section 226"), and therefore that the cause of action is not derivative and can be established based upon Hertz's uniform and standardized wage statements.  *See* MPA IV at 7-9.  The cases cited by Plaintiff for this proposition, however, are wholly distinguishable.  In *Jaimez v. DAIOHS USA, Inc.*, the California Court of Appeals found

that common issues predominated over a subclass asserting violations of Section 226, even where there was no evidence of actual injury.  181 Cal.App. 4th 1286, 1306 (2010).  In that case, however, the cause of action was based on allegations that the paystubs failed to *identify* "gross wages," total hours worked, commission rates, and hourly rates as required by the statute.  *See id.* at 1305. Similarly, in *Wang v. Chinese Daily News, Inc.*, the Court found that plaintiffs had established a Section 226 violation where pay stubs uniformly failed to *list* the number of hours an employee worked, or their hourly rate of pay.  435 F.Supp. 2d 1042, 1049-51 (C.D. Cal. 2006).  In *Wang*, the Court explained that an employee suffers injury from a wage statement that fails to *include* the statutorily required categories of information because an employee might not be paid overtime to which he or she was entitled, and would be unable to challenge the failure to receive overtime pay without access to information as to how many hours were worked, and the rate at which compensation was calculated.  *See id.* at 1050.

Here, Plaintiff does not allege that the paystubs distributed by Defendant were facially deficient, but that they were *inaccurate* because they failed to include premium wages for alleged missed meal and rest breaks.  *See* SAC ¶ 71-78.  Plaintiff asserts that "[t]he predominant issue being addressed by this subclass is whether the class members received non-compl[ia]nt paystubs that failed to reflect all monies owed."  MPA IV at 7.  As the Court understands it, Plaintiff asserts that the paystubs "failed to reflect all monies owed" because they did not include proper compensation and overtime for missed meal and rest breaks.  *See id.*  Thus, unlike the claims in *Jaimez* and *Wang*, Plaintiff and each member of the subclass would need to prove that they were subject to a separate legal violation (failure to provide meal and rest breaks) in order to prove a Section 226 claim.

As detailed below, the Court would find that common questions predominate the analysis of whether proper compensation and overtime for missed meal and rest breaks was provided to members of the much more *narrowly tailored* remaining subclasses.  However, the "One Year § 226 Subclass" is not tailored to include only those individuals for whom a common meal/rest break/overtime policy applied.   Due to the overbroad nature of the subclass definition, individualized questions would predominate the "One Year § 226 Subclass" and it is not certifiable.

Furthermore, the Court notes that, the current class designation creates an impermissible fail-safe class.  "[F]ail-safe" is a label used to describe "the obvious problems that exist when the

class itself is defined in a way that precludes membership unless the liability of the defendant is established." *See Kamar v. RadioShack Corp.*, 375 Fed.Appx. 734, 736 (9th Cir. 2010). Here, individuals are considered a member of the subclass if they are "raising a Labor Code § 226 claim because they received non-compliant paystubs that failed to reflect all monies owed." This is a quintessential example of a fail-safe class, where membership is premised upon a finding that Defendant violated the law. This problem underscores the predominance problems posed by the subclass. Thus, the Court would also find the "One Year § 226 Subclass," uncertifiable for the independent reason that it is a fail-safe class.

As to the remaining subclasses, the Court would find, based on an independent review closely tied yet distinct from the Court's analysis above regarding commonality, that predominance under Rule 23(b)(3) is satisfied. Hertz's policies related to the availability of meal and rest breaks for Class Members, and the auto-deduction of those breaks from wage statements, permeate and predominate Plaintiff's claims. *See* Barrera Decl. ¶32. Indeed, California law would apply to each Class Member's claims, and substantially identical if not completely identical facts and circumstances make common questions predominate. *See id.* Their claims involve substantially the same published policies and collective bargaining agreements. *See id.*

For similar reasons to the above, the Court would find that the superiority requirement under Rule 23(b)(3) is also met, as to all but the "One-Year § 226 Subclass."[6] The superiority inquiry focuses on "whether maintenance of the litigation as a class action is efficient and whether it is fair." *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1175-76 (9th Cir. 2010); Fed. R. Civ. P. 23(b)(3) (considering class members' interests in controlling separate actions, other litigation, desirability of concentrating litigation in a forum, and management difficulties). There is little incentive for Class Members to individually control the prosecution of separate actions as they are individually too small to justify individual potential litigation costs, there are no other known actions by Class Members against Defendant, and certification and subsequent settlement here would likely reduce litigation costs. Barrera Decl. ¶ 74. This is adequate to establish superiority. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation.") (citation omitted).

---

[6] The Court would find that maintenance of a fail-safe class, such as the "One Year § 226 Subclass" would be inefficient and impractical.

In sum, the Court would grant the request for class certification in the MPA IV for all but the "One Year § 226 Subclass," based on the Court's independent review of the Rule 23(a) and Rule 23(b)(3) requirements.  The Court would allow Plaintiff one final opportunity to file a renewed motion for preliminary approval.  The Court would indicate, however, that any attempt to seek preliminary approval of an overbroad subclass such as the "One Year §226 Subclass" will be denied.

The Court will analyze whether it would grant Preliminary Approval of the settlement were the "One Year § 226 Subclass" removed, for the purpose of guiding the parties' future settlement negotiations, although the Court will not grant preliminary approval of the settlement as it exists currently given that it would not certify the "One Year § 226 Subclass."

### C. Preliminary Approval of the Revised Settlement

The Ninth Circuit has noted various factors for district courts to consider in deciding whether a class action settlement is fair, adequate, and reasonable:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation omitted).

In addition, the Ninth Circuit instructs district courts to examine potential red flags indicating collusion.  "Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  *In re Bluetooth*, 654 F.3d at 947.

Under recent amendments to the Federal Rules of Civil Procedure, district courts must now consider a list of factors delineated in Rule 23(e)(2), which are somewhat similar to the Ninth Circuit's longstanding factors and considerations:

> **(2)** ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> **(A)** the class representatives and class counsel have adequately represented the class;

14

**(B)** the proposal was negotiated at arm's length;

**(C)** the relief provided for the class is adequate, taking into account:

**(i)** the costs, risks, and delay of trial and appeal;

**(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

**(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and

**(iv)** any agreement required to be identified under Rule 23(e)(3); and

**(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[7]

Regarding these recent amendments, the Advisory Committee recognizes that federal "[c]ourts have generated lists of factors" to decide the fairness, reasonableness, and adequacy of a settlement, and that "each circuit has developed its own vocabulary for expressing these concerns." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.  Recognizing that, the Advisory Committee explained that it did not intend to "displace any factor [used by federal courts], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."[8]  *Id.*  As such, to the extent possible the Court would apply the factors listed in Rule 23(e)(2) through the lens of the Ninth Circuit's factors and existing relevant precedent. The Court would also take heed of the Advisory Committee's warning not to let "[t]he sheer number of factors . . . distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)."  Advisory Committee's Notes on 2018 Amendment to Fed. R. Civ. P. 23(e)(2).  If the Court's analysis of the Ninth Circuit's longstanding factors does not encompass any of the Rule 23(e)(2) factors, the Court will explicitly discussed such factors at the conclusion of its analysis.

"[T]he preliminary approval stage [i]s an 'initial evaluation' of the fairness of the proposed

---

[7] After propagating certain amendments, the Supreme Court transmitted those amendments to Congress, instructing that those amendments "shall take effect on December 1, 2018, and shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending." Order Submitting Amendments to Federal Rules of Civil Procedure at 3 (April 26, 2018), https://www.supremecourt.gov/orders/courtorders/frcv18_5924.pdf; *see generally, In re Pangang Grp. Co., LTD.*, 901 F.3d 1046, 1050 (9th Cir. 2018) (describing amendment process).

[8] "[T]he Advisory Committee Notes provide a reliable source of insight into the meaning of a rule . . . ."  *See United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002).

settlement made by the court on the basis of written submissions and informal presentation from the settling parties." *In re High-Tech Emp. Antitrust Litig.*, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013). A court need not conduct a complete analysis of the fairness factors at this time because "some of these 'fairness' factors cannot be fully assessed until the Court conducts the final approval hearing[.]" *Lusby v. Gamestop Inc.*, 297 F.R.D. 400, 412 (N.D. Cal. 2013). Instead, at this stage, "[p]reliminary approval of a settlement and notice to the class is appropriate if '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval.'" *Johnson v. Quantum Learning Network, Inc.*, 2016 WL 4529607, at *1 (N.D. Cal. Aug. 30, 2016) (quoting *In re Tableware*, 484 F. Supp. 2d at 1079). The "decision to approve or reject a settlement is committed to the sound discretion of the trial judge[.]" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000) (internal quotation marks omitted). However, in instances where, as here, "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton*, 327 F.3d at 952. Indeed, settlements negotiated *before* class certification "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth*, 654 F.3d at 946. This "more exacting review . . . ensure[s] that class representatives and their counsel do not secure a disproportionate benefit 'at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1027).

> *1. Whether the Settlement is the Product of Serious, Informed, Non-Collusive Negotiations*

Addressing whether the Revised Settlement is the product of serious, informed, non-collusive negotiations, the Court first looks to whether the parties engaged in an adversarial process to arrive at that agreement. As Plaintiff's counsel declares there was significant discovery taken in this case prior to the initiation of negotiations. *See* Barrera Decl. ¶ 14. Furthermore, the parties vigorously litigated a motion for class certification prior to settlement. *See generally* Docket. The parties mediated for months through a number of experienced mediators before reaching settlement. *See* Barrera Decl. ¶ 18. The parties came to this settlement agreement after investigating the relevant facts, applicable legal principles, and settlements in other class actions

of a similar nature.  *See id.* ¶ 19-20.  It is also important to the note they came to this settlement *after* conducting formal and informal discovery on certain issues and *after* the Court had ruled on Plaintiff's original class certification motion which revealed some of the strengths and weaknesses of Plaintiff's case.  *See id.* ¶¶ 23-25.

In other words, only after significant discovery, the use of experienced mediators, and motions practice did the parties enter into the Revised Settlement and the original Settlement.  That order and process matters to the Court.  *See Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested.") (citations omitted); *In re Zynga Inc. Secs. Litig.*, Case No. 12-cv-04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (holding that the parties' use of mediator and fact that significant discovery had been conducted "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement"); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (noting that the parties' use of a mediator "suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel.").  Though the Court does not grant undue weight to the recommendation of the parties' counsel, the fact they worked on these cases at length and have an understanding of their risks, also cuts slightly in favor of finding the settlement procedurally robust and the product of arm's length negotiations.  *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. Mar. 9, 1989) ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.") (quotation omitted).

### 2. Obvious Deficiencies

Regarding the second of the longstanding factors, the Court would not find any obvious deficiencies in the Revised Settlement.  There are no obvious indications of collusion, and Plaintiff negotiated a substantial sum of monetary damages for the class ($1,750,000), despite having lost a motion for class certification, and identified potential deficiencies in their claims.  Therefore, the Court would not find that there are any red flags or obvious deficiencies present in this settlement.

### 3. Falling Within the Range of Possible Approval

As to the fourth factor, the Court would find that the Revised Settlement falls within the range of possible approval.  "To determine whether a settlement 'falls within the range of possible approval' courts focus on 'substantive fairness and adequacy' and 'consider plaintiffs' expected

17

recovery balanced against the value of the settlement offer." *Shuchardt v. Law Office of Rory W. Clark*, No. 15-CV-01329-JSC, 2016 WL 232435, at *10 (N.D. Cal. Jan. 20, 2016) (quoting *Tableware*, 484 F. Supp. 2d at 1080). *See* Def.'s Br. at 11-17. In determining whether "the relief provided for the class is adequate," the Court must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *See* Fed. R. Civ. P. 23(e)(2)(C)-(D).

The Court has already indicated that it would not approve the first settlement subclass. Excluding the first settlement subclass, however, the settlement as written appears to be within the range of possible approval. The revised settlement has clarified which settlement subclasses have claims for which causes of action. Moreover, the revised settlement has tied the formula for compensation to the type of relief available for each subclass based on the cause(s) of action asserted. *See* Settlement at 9-10. Plaintiff has also negotiated a significant sum of monetary damages ($1,750,000) despite having identified potential deficiencies in their claim and having lost their motion for class certification. *See* MPA IV 10-11. Moreover, although the Court may not award the full amount of attorney's fees sought (35%), the settlement agreement makes clear that the payment of attorneys' fees and costs are subject to judicial approval. Thus, the Court would not find the terms of attorneys' fees outside the realm of possible approval. Finally, Plaintiff has indicated that there are no agreements outside of the Settlement Agreement that would need to be disclosed under Rule 23(e)(3). Thus, the Court would find that the Settlement, excepting the "One Year § 226 Subclass," appears to be within the range of possible approval.

### 4. Preferential Treatment

The Court will not address the issue of preferential treatment until the settlement is revised such that all subclasses can be approved, given that the alteration of subclasses will likely impact the formula for compensating individual class members.

### D. Adequacy of Class Notice

Pursuant to Rule 23(e), district courts must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. *See* Rule 23(e)(1)(B). Regarding Rule 23(b)(3) classes, the following subsection provides:

> the court must direct to class members the best notice that is

> practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Rule 23(c)(2)(B) (reformatted for style herein).  As such, the rule requires that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  In addition, due process mandates that the "notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' "  *See id.* at 174 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  Class notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Notice in this case will be mailed to the last-known mailing address of the class members, provided by Defendant.  *See* Settlement Agreement ¶¶ 14, 16.  The Settlement Administrator will also attempt to locate any Settlement Class Member whose notice is returned by the post office by performing a skip trace follow up and re-mailing.  *See id.* ¶ 16.  The Court would conclude that the proposed class notice is the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *See* Rule 23(c)(2)(B).  As long as such notice includes "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)," then the Court would deem this requirement satisfied.  *See id.*

### E. Appointing Class Counsel and Class Representatives

As discussed to some degree above, the class representative has reviewed and prepared documents, supported the litigation, and from what the Court can tell has placed the interest of Class Members first.  With that said, and the fact the Court has deemed the class representatives adequate under the class certification analysis above, the Court would appoint the requested class representative as class representative for purposes of these lawsuits and the Revised Settlement. *See Bisaccia v. Revel Sys. Inc.*, No. 17-CV-02533-HSG, 2019 WL 861425, at *5 (N.D. Cal. Feb. 22, 2019) ("Because the Court finds that Plaintiffs meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiffs as class representatives.").

The Court must also appoint class counsel.  *See* Fed. R. Civ. P. 23(c)(1)(B).  Factors that the Court considers in this inquiry include "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *See* Fed. R. Civ. P. 23(g)(1)(A).  Based on the evidence presented going toward these factors and the Court's firsthand experience in witnessing Plaintiff's counsel for over a year and a half in litigating this matter, the Court would find that these factors cut in favor of appointing the requested class counsel.  *See* Barrera Decl. ¶¶ 3-6.  The Court would hereby appoint Calderone Law Firm and Barrera & Associates as class counsel for purposes of this litigation and the Revised Settlement.

**III.  Conclusion**

For the foregoing reasons, the Court would **DENY** the MPA IV.  The Court notes that this is the third time the Court has denied a motion for preliminary approval on the grounds that the class is not certifiable, and that the Court previously denied Plaintiff's motion for class certification.  Although the Court would consider a fifth motion for preliminary approval, if that motion is denied the Court would be unlikely to permit Plaintiff to file a sixth motion.